## CHAS. FREEDMAN v. MORROW SHOE MFG. CO.

ERROR TO THE COURT OF COMMON PLEAS OF LANCASTER
COUNTY.

Argued May 17, 1888—Decided October 1, 1888.

If, after a sale and delivery of goods to the buyer, the seller refuse to
rescind and the goods are levied upon in the possession of the buyer at
the suit of the buyer's creditor, the seller may not then assert title in an
interpleader.

Before GORDON, C. J., PAXSON, GREEN, CLARK and WILL-
IAMS, JJ.; TRUNKEY and STERRETT, JJ., absent.

No. 419 January Term 1888, Sup. Ct.; court below, No. 15
November Term 1886, C. P.

On October 16, 1886, an issue was framed under the sheriff's
interpleader act, to try the right to certain property levied
upon as the property of Charles A. Reece, in which issue
Charles Freedman, claimant, was plaintiff and The Morrow Shoe
Manufacturing Company, execution creditor, was the defend-
ant.

At the trial on January 25, 1888, the following facts ap-
peared:

In April and May, 1886, Charles A. Reece, a retail boot and
shoe dealer at Lancaster, ordered several lots of shoes from the
manufactory of Charles Freedman, of Philadelphia. After
having received the goods shipped to him in pursuance of his
orders, and sold some of them, on June 21, 1886, Reece re-
turned those unsold by express to Freedman, who refused to
receive them. The express company threatened to sell the
goods for charges, when Reece had them returned to him at
Lancaster, and placed them upon his shelves.

On July 16, 1886, Freedman brought suit against Reece to
No. 62 August Term 1886, to recover the balance due upon the
goods sold, in which suit, on September 21st, Reece filed an
affidavit of defence, setting forth, inter alia, " the goods speci-
fied in the claim of the plaintiff filed were not the goods order-

ed and contracted for by the defendant, and when they were received he was compelled to return them to the plaintiff, . . . and there is now nothing due to plaintiff, the said goods being at the disposal of the plaintiff, as he has been notified." This suit was pending when,

On October 6, 1886, Reece confessed a judgment to Morris Levy, in trust for Esther Reece, his wife, for $2,500, upon which a fieri facias issued to No. 56 November Term 1886, and a levy was made thereon by the sheriff upon the stock of goods in Reece's store, including the unsold portion of the goods ordered from Freedman. On October 9th, Freedman filed with the sheriff a claim to the ownership of the goods ordered from him. On October 13th, Reece confessed a judgment to The Morrow Shoe Manufacturing Company for $620, upon which execution issued the same day and a levy was made thereon upon the stock of goods of the defendant, subject to the prior levy referred to. The same day, October 13th, Freedman discontinued the suit against Reece, to No. 62 August Term 1886, and subsequently, upon the sheriff's petition this issue was framed.

The court, PATTERSON, J., charged the jury:

This is a contest about the ownership of goods. The defendant in this case, having sued out an execution, levied upon these goods; they were claimed then by Mr. Freedman; and it being a question of fact as well as of law, the court, at the request of Mr. Freedman, granted an issue, and that issue is drawn up in these words: " An issue to try by a jury the right to certain personal property levied upon by the sheriff on fieri facias to No. 56 November Term 1886." It is to try the right to certain personal property.

That issue in itself admits that there was an execution issued and in the hands of the sheriff, and that these goods were levied on, and the plaintiff in this execution was The Morrow Shoe Manufacturing Company, and after the levy was made Mr. Freedman made his claim, as he has tried to show to you, on a previous arrangement between him and Mr. Reece. [And this question of ownership, that is, whether the goods belong to the sheriff or to the plaintiff in the fieri facias, namely, The Morrow Shoe Manufacturing Company, depends altogether on the question of delivery.][1]

Charge of Court below.

[The law in regard to personal property is this : If I sell you a horse to-day for $500, and you pay me the cash, but leave him in my possession, and I am to deliver him to you to-morrow, and I am in debt, and a man comes down with an execution upon me before I deliver it to you, and the sheriff levies upon that horse, he takes the horse, because the contract of sale was not consummated. There is no consummation of the sale of personal property, even if the money is paid, without delivery. If the sheriff takes that property before delivery, you don't get it. That is the position in which this plaintiff stands.] [2]

I will now read the points submitted by the plaintiff, and they are as follows :

1. If the jury believe that Charles A. Reece rescinded any contract of sale of the goods in contest in this case, and such rescission was acquiesced in by the plaintiff, and his claim of property was made before the execution of The Morrow Shoe Manufacturing Company was issued and the levy on such goods was made, the verdict must be for the plaintiff.

Answer: We must deny that point. [3]

2. If the jury believe that the goods mentioned in the plaintiff's claim were not the goods ordered and contracted for by Charles A. Reece, as sworn to by said Reece in his affidavit of defence filed to No. 62 August Term, 1886, and that said Reece placed said goods at the disposal of plaintiff, and that the plaintiff thereupon, and before the levy by the sheriff on the fieri facias of The Morrow Shoe Manufacturing Company, claimed said goods as his own, that in that case the verdict must be for plaintiff.

Answer: No. This point is refused. The plaintiff, besides showing that Mr. Reece said that these goods were at the disposal of him, Mr. Freedman, the plaintiff must show a delivery before the levy of the sheriff on the fieri facias of the defendant in this case. The arrangement between Mr. Reece and Mr. Freedman was very fair, and as it didn't suit Mr. Reece, he was willing to give it up to Mr. Freedman, but he cannot come in and hold the goods by a mere private contract without showing a change of possession of these goods between the execution creditor and Mr. Reece. [4]

3. If the jury believe the evidence submitted by the plaintiff's witnesses, the verdict must be for the plaintiff.

Arguments.

Answer: We deny that point, if you have heard the evidence and believe it. [5]

The defendant has presented two points and they are as follows:

1. The verdict should be in favor of the defendant.

Answer: We affirm this point, if you believe the testimony of the defendant, this record evidence and also the verbal testimony. [6]

2. The plaintiff having brought suit to recover the value of the goods in dispute after sale and delivery of the same, he thereby affirmed the contract of sale, and the title in the goods was not vested in him.

Answer: This point rather submits a question of fact to the court than a point of law. If you believe from the evidence that the plaintiff, Charles Freedman, did bring a suit against Charles A. Reece for the price of these goods, it is some evidence that the plaintiff, Freedman, did view the sale and delivery to Reece as fully consummated, and that he had parted with the possession of the goods. [7]

Then, when Mr. Reece returned some of the goods, and said he would not take them, he did not receive them; if he had received them after the return, then the sheriff could not have levied upon them; but he did not, and they were returned to Mr. Reece again; they were in his store. [Hence there was no delivery or change of possession, but they were in Mr. Reece's possession, and Mr. Reece was the defendant in this execution and in the one now in contest; The Morrow Shoe Manufacturing Company, and a creditor, finding them there, had a right to levy on them.] [8]

The verdict of the jury was in favor of the defendant. A rule for a new trial having been discharged, and judgment entered upon the verdict, the plaintiff took this writ, assigning as error:

1, 2. The parts of the charge embraced in [ ] [1,2]
3–5. The answers to the plaintiff's points. [3 to 5]
6, 7. The answers to the defendant's points. [6 to 7]
8. The part of the charge embraced in [ ] [8]

*Mr. J. W. Denlinger*, for the plaintiff in error:

Opinion of the Court.

1. We hold, first, that under the evidence, Charles A. Reece never had the title to the goods vested in him, and therefore they were not subject to levy on the execution of the defendant in the issue. Second, if any contract of sale had ever been made between Mr. Freedman and Mr. Reece, it was rescinded before the judgment confessed by Mr. Reece to the defendant, and when the execution was issued and levy made, the title was revested in the plaintiff in the issue. There can be no rule of law that will make the property of one, the subject of levy and sale for the debts of another.

2. The instructions upon the matter of delivery, we doubt not would have been correct, had a sale of the goods ever been made to Mr. Reece. The plaintiff in the issue claimed no title through or under Mr. Reece, and even in cases of actual sales, this court in a number of decisions has relaxed somewhat the general rule that a change of possession is absolutely necessary, in the sale of personal property, to vest title in the vendee so as to protect the same from the executions of the vendor's creditors : Cessna v. Nimick, 113 Pa. 82 ; Crawford v. Davis, 99 Pa. 578.

*Mr. B. F. Davis*, for the defendant in error :

The plaintiff's History of the Case shows that he had no claim to the property in dispute. He delivered the goods on Reece's order, refused to receive them back, and brought suit to recover their value. His suit was pending when the levy was made, and he is estopped by his own acts from claiming the goods against the execution creditor : Brunswick & Balke Co. v. Hoover, 95 Pa. 512.

OPINION, MR. JUSTICE PAXSON :

This was a feigned issue to try the title to certain personal property levied upon by the sheriff. It appears that Charles A. Reece, the defendant in the execution, ordered a quantity of boots and shoes from Charles Freedman, the plaintiff, who was a manufacturer thereof, doing business in Philadelphia. Freedman sent the goods to Reece at Lancaster by four separate shipments commencing on April 22d and ending on May 7, 1886. Reece received them, placed them in his store with his other stock, and retained them without objection until the 21st of the following June. In the meantime he had sold

boots and shoes, part of said shipments, to the extent $117.85. On June 21st, he returned to Mr. Freedman by express the balance of said goods remaining unsold. If any explanatory letter accompanied them it has not been given, but Mr. Reece in his testimony states his reasons for returning said goods as follows: "I sent him (plaintiff) a lot of goods, I think on the 21st of June; I found the goods didn't give satisfaction to my customers, and I was compelled to send the goods back, and paid him for what I had sold, and he wrote me a letter in reply, refusing to accept the goods." The result was they remained in the express office in Philadelphia, Mr. Freedman refusing to receive them, until Mr. Reece was notified by the express company to take them away or they would be sold to pay charges, when, acting under the advice of counsel, he had them returned to his store in Lancaster. Mr. Reece, having refused to pay, Mr. Freedman brought a suit in the Common Pleas of Lancaster county to recover the balance unpaid of his bill. Thus the matter stood until Mr. Reece's stock was levied upon by the sheriff, when Mr. Freedman made claim to the unsold portion of the goods as his property, and gave bond to the sheriff under the interpleader act. The jury found that the goods in question were the property of Reece, and of course liable to the execution.

The learned judge below in his instructions to the jury, applied the ordinary rule, that as against creditors a delivery of personal property must accompany a sale. We see no error in this. The case was argued here upon the theory of a complete rescission of the contract by Reece, and that he had never accepted the goods; that the title to them was never vested in him and that upon their return after being rejected by Freedman, he held them merely as the bailee of the latter. If the facts were so the case would assume a different aspect. But Reece received the goods, placed them upon his shelves, kept them there without objection for about two months, and actually sold a considerable portion of them. He then, on June 21st, returned the balance of them for no better reason than that they did not suit his customers. At that time his power to rescind was gone, and the goods were his. Freedman might have permitted him to rescind but he refused, and emphasized his refusal by bringing a suit for their value. Under such

circumstances he could not get back title without a corresponding delivery of possession as in other cases.   Much less could he take the property out of the grasp of an execution by a mere claim of ownership.   The plaintiff was playing a game of fast and loose and has lost.   He might have saved himself but missed his opportunity.   We cannot help him.

Judgment affirmed.